IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

DONALD RAY HOPKINS,

    Plaintiffs,

v.

AMERICAN HOME MORTGAGE SERVICING, INC. et al.,

    Defendants.

No. 13-4447 RS

**ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS AND ORDERING PLAINTIFF TO SHOW CAUSE**

## I.  INTRODUCTION

This action was removed to federal court following years of litigation before the Alameda County Superior Court. Several motions are now pending: defendant Citibank's motions to dismiss and to strike portions of plaintiff's fourth amended complaint (FAC) and defendant American Home Mortgage Servicing, Inc.'s motion to dismiss the FAC. For the following reasons, defendants' motions to dismiss are granted in part with respect to plaintiff's federal claims. In particular, the eighteenth claim for relief (under RICO) is dismissed with leave to amend and the eighth claim (under RESPA) is dismissed with prejudice and without leave to amend. In addition, plaintiff is ordered to show cause why his remaining federal claim against defendant ABC should not be dismissed. If plaintiff wishes to remain in federal court, he must file an amended complaint and

respond to this order within thirty (30) days.[1]

## II. BACKGROUND

Plaintiff Donald Ray Hopkins contends that defendants Citibank, Homeward Residential Inc. (Homeward) f/k/a American Home Mortgages Servicing Inc. (AHMSI),[2] and American Home Mortgage Corp. d/b/a American Brokers Conduit (ABC) conspired to foreclose upon his home in Oakland, California. According to Hopkins, AHMSI and ABC secretly instructed his bank, Citibank, to cancel several timely electronic mortgage payments. Hopkins avers that defendants blamed him for the resulting nonpayment, thereby creating a pretext for the subsequent non-judicial foreclosure of his home, which they allegedly sold at a significant profit.

Hopkins filed this action in the Alameda County Superior Court in June 2011. Some two years and four amended complaints later, Hopkins for the first time alleged several federal claims for relief in August 2013. Defendants removed, contending this court has original jurisdiction over Hopkins' federal claims and supplemental jurisdiction over his state law claims. Shortly thereafter, Citigroup filed motions to strike and to dismiss the FAC, with AHMSI bringing its own motion to dismiss. More than two weeks after the opposition deadlines passed for all three aforementioned motions, Hopkins moved to stay these proceedings, because defendant ABC, the purported originator and holder of the mortgage at issue, had filed for bankruptcy protection. (ECF No. 29; ECF No. 35).

A previous order denied Hopkins' motion to stay and ordered him to file responses to defendants' motions by December 17, 2013. (ECF No. 38). Hopkins filed separate oppositions to Citibank's and AHMSI's motions to dismiss, but did not oppose Citibank's motion to strike.[3] (ECF No. 39; ECF No. 40). Hopkins argues that all of his claims are properly pleaded or, in the

---

[1] This order does not reach Citibank's motion to strike. If plaintiff substantiates a basis for federal jurisdiction, Citibank's motion to strike will be resolved at a later date.

[2] AHMSI is now known as Homeward Residential, Inc. Because most filings refer to Homeward as AHMSI, that acronym will be used here.

[3] Although Hopkins titled his opposition to Citibank's motions "Plaintiff Donald Ray Hopkins' Memorandum of Points and Authorities in Opposition to Defendant Citibank's Motions to Dismiss/Strike Fourth Amended Complaint[,]" he did not offer any substantive opposition to Citibank's motion to strike. (*See* ECF No. 40).

alternative, that leave to amend is warranted. Citibank and AHMSI filed replies requesting Hopkins' claims be dismissed with prejudice. The motions were submitted without oral argument pursuant to Civil Local Rule 7-1(b).

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 566 U.S. 652, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.* The determination is a context-specific task requiring the court "to draw in its judicial experience and common sense." *Id.* at 1950.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

### IV. DISCUSSION

A. <u>Eighth Claim for Relief for Violating the Real Estate Settlement Procedures Act (RESPA)</u>

Under RESPA, "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." 12 U.S.C § 2605(c)(1) (2012). RESPA also requires loan servicers to respond to Qualified Written Requests (QWR) submitted by borrowers. § 2605(e). Hopkins alleges AHMSI violated RESPA, because AHMSI failed to provide (1) notice when it began servicing the loan, (2) notice when AHMSI filed for bankruptcy, (3) copies of the operative loan documents, and (4) a response to Hopkins' March 30, 2012 QWR. (FAC, Exb. A at ¶¶ 22, 69–70). As an initial matter, it is not clear that RESPA requires loan servicers to provide borrowers with notice of bankruptcy proceedings or copies of loan documents. Hopkins does not invoke a single piece of legal authority to support his contrary contention.

More importantly, Hopkins fails to allege any pecuniary loss attributable to the RESPA violations. This defect is fatal to his RESPA claims. RESPA provides that anyone who fails to comply with its provisions shall be liable to the borrower for "any actual damages to the borrower as a result of the failure[.]" 12 U.S.C. § 2605(f). "Although this section does not explicitly set this out as a pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damage in order to state a claim." *Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal 2009). To advance a RESPA claim, a "[p]laintiff must, at a minimum, also allege that the breach resulted in actual damages." *Id.* (citing *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)). "This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm." *Id.* at 1097. Courts, however, "have interpreted this requirement [to plead pecuniary damage] liberally." *Yulaeva v. Greenpoint Mortgage Funding, Inc.*, CIVS-09-1504 LKK/KJM, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3, 2009). For example, in *Hutchinson,* plaintiffs pled sufficient pecuniary loss by claiming they suffered negative credit ratings when the servicer submitted delinquency notices to credit bureaus after receiving a QWR. 410 F. Supp. 2d at 383.

Here, Hopkins offers only conclusory allegations that he is entitled to damages and attorney fees under RESPA. (*See* FAC at ¶ 72). Hopkins fails to explain how the alleged RESPA violations caused him any pecuniary loss. *See Shepherd v. Am. Home Mortgage Servs., Inc.*, CIV 209-1916

WBS GGH, 2009 WL 4505925 (E.D. Cal. Nov. 20, 2009) (concluding plaintiff's allegation he "suffered and continue[d] to suffer damages and costs of suit" was insufficient even under "a liberal pleading standard for harm"). The specific harms plaintiff complains of—the converted loan payments, improper late fees, and non-judicial foreclosure—allegedly resulted from defendants conspiring to cancel Hopkins' electronic checks and Hopkins ceasing his loan payments. These injuries do not flow from AHMSI's alleged RESPA violations. Indeed, the complaint suggests that Hopkins was aware during the relevant time period that AHMSI serviced his loan, as he made loan payments to AHMSI since at least July 2008. (*See* Customer Account Activity Statement, FAC, Exb. 3). Moreover, Hopkins' QWR was not submitted until March 2012, a year after Hopkins admittedly stopped paying his loans. *See Allen*, 660 F. Supp. 2d at 1097 (stating plaintiff's "loss of property appears to have been caused by his default"). Because it does not appear that Hopkins can cure this deficiency with additional good faith pleading, Hopkins' eighth claim for relief is dismissed with prejudice.

B. <u>Eighteenth Claim for Relief for Violating the Racketeer Influenced and Corrupt Organizations Act (RICO)</u>

To state a RICO claim, a plaintiff must allege that defendant (a) received income derived from a pattern of racketeering activity, and used the income to acquire or invest in an enterprise; (b) acquired an interest in, or control of, an enterprise through a pattern of racketeering activity; (c) conducted or participated in the conduct of an enterprise through a pattern of racketeering activity; or (d) conspired to engage in any of these activities. *See* 18 U.S.C. § 1962(a)–(d). Although Hopkins' complaint does not specify which RICO subsection(s) defendants allegedly violated, his allegations most closely fit § 1962(c) and are analyzed accordingly.[4] S*ee Reynolds v. E. Dyer Dev. Co.*, 882 F.2d 1249, 1251 (7th Cir. 1989) (stating "[I]t is essential to plead precisely . . . the RICO section allegedly violated[,]" but affirming district court decision to analyze under § 1962(c)). Under § 1962(c), a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or

---

[4] Hopkins' allegations may also fit within § 1962(d). Because Hopkins' claim under § 1962(d) depends on his § 1962(c) claim, the analysis is restricted to § 1962(c). *See Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007).

property." *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir.1996) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

"[R]acketeering activity" is any act indictable under several provisions of Title 18 of the United States Code, and includes the predicate acts of mail fraud and wire fraud, each of which is alleged in this case.[5] *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004) (citing 18 U.S.C. § 1961(1)). Claims for mail and wire fraud are subject to Rule 9(b)'s heightened pleading requirements. *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557–58 (9th Cir. 2010); *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) ("[Rule 9(b)] requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme.").

Hopkins alleges that defendants used mail and wires to disseminate false and misleading information with intent to cause him to miss payments, incur late fees, and default on his home loan.[6] (FAC at ¶¶ 130–145). Specifically, Hopkins avers he directed Citibank to make timely electronic loan payments to AHMSI from July 2010 to October 2010, but AHMSI instructed Citibank to cancel these payments.[7] (*Id.* at ¶ 1). Hopkins further avers that Citibank and AHMSI either applied these payments to his loan late or converted the funds into secret accounts.[8] (*Id.* at ¶¶ 1–3). Hopkins' RICO claim suffers from several deficiencies, which are addressed in turn.

---

[5] Hopkins also alleges "unlawful dealings in violation of 18 U.S.C. Sections 1961, 1962 and their sub parts." (FAC at ¶ 137). The term "unlawful dealings" does not appear in the RICO statute, nor does it identify a cognizable legal theory on which plaintiff could base his claim.

[6] Hopkins suggests in his opposition that defendants' alleged RESPA violations are relevant to his RICO claim. (ECF No. 39 at 9). RESPA violations, however, are not predicate acts included in the statutory definition and Hopkins offers no authority or explanation why the alleged violations should be considered "racketeering activity." *See* 18 U.S.C. § 1961(1). Hopkins also alleges that defendants engaged in predatory loan practices. (FAC at ¶¶ 130–145). Hopkins concedes that neither AHMSI nor Citibank originated his home loan. Further, Hopkins has not alleged facts showing AHMSI's or Citibank's involvement, if any, in issuing his loan. Consequently, even if these practices are predicate acts, they do not support Hopkins' RICO claims against AHMSI and Citibank.

[7] Hopkins complaint is inconsistent as to how many payments AHMSI instructed Citibank to cancel.

[8] AHMSI's Customer Account Activity Statement, attached to the FAC, indicates that Hopkins' July 2010 through August 2010 payments were eventually applied to his loan, but that the July 2010 payment incurred a late fee. Hopkins' October 2010 payment was never applied to the mortgage. (FAC, Exb. 3).

1. RICO Enterprise

Hopkins' complaint fails to identify a RICO enterprise. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161, (2001); *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005). A "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). As AHMSI and Citibank are recognized legal entities, they are "persons" within the meaning of RICO. An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." § 1961(4). Hopkins has not alleged the existence of a separate legal entity apart from the defendants; rather his complaint relies on an association-in-fact between the individual defendants. *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 940 (N.D. Cal. 2013) ("An enterprise that is not a legal entity is commonly known as an 'association-in-fact' enterprise.").

The Supreme Court in *United States v. Turkette* stated that an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S. 576, 583 (1981). Ninth Circuit precedent requires proof of three elements: (i) a common purpose of engaging in a course of conduct; (ii) evidence of an "ongoing organization, formal or informal"; and (iii) evidence that the various associates function as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 551–52 (9th Cir.2007) (en banc) (quoting *Turkette*, 452 U.S. at 583).[9] However, an "associated-in-fact enterprise under RICO does not require any particular organizational structure, separate or otherwise." *Id*. at 551.[10]

Hopkins alleges that the defendants "associated themselves together for a common purpose" of distributing false information to misdirect or steal his monthly loan payments. (FAC at ¶¶ 130,

---

[9] The Ninth Circuit in *Odom* noted that the definition of an enterprise is "not very demanding." 486 F.3d at 548; *Boyle v. United States*, 556 U.S. 938, 944 (2009) ("the very concept of an association in fact is expansive").

[10] *Odom* specifically overruled prior holdings requiring the associate-in-fact enterprise to have a sufficiently "ascertainable structure, separate and apart from the structure inherent in the conduct of the pattern of racketeering activity." *See Chang v. Chen*, 80 F.3d 1293, 1295 (9th Cir. 1996).

133).  Hopkins specifically alleges that AHSMI and Citibank secretly canceled his checks, deposited the funds into secret accounts, and continued to issue statements indicating his loans had been properly paid.  (FAC at ¶¶ 1–3).  These allegations, if true, are sufficient to show defendants' common purpose of misdirecting or stealing Hopkins' loan payments.  *See Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1203 (C.D. Cal. 2008) (finding plaintiffs' allegations that defendants illegally foreclosed on properties "sufficiently plead that defendants had a common purpose— i.e., to collect and foreclose on mortgages illegally").

Similarly, Hopkins' allegations are sufficient to show an ongoing organization.  A plaintiff properly pleads an ongoing organization when he alleges the vehicle or mechanism used to commit the predicate acts.  *Odom*, 486 F.3d at 552 ("An ongoing organization is a vehicle for the commission of two or more predicate crimes.") (quotation omitted).  Here, Hopkins' allegations of the canceled checks, secret accounts, and incorrect statements sufficiently show the vehicle for defendants' alleged fraudulent acts.  *See id*. (finding allegations that defendants established "mechanisms for transferring plaintiffs' personal and financial information" and a "cross-marketing contract" sufficiently evinced an ongoing organization); *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 993 (C.D. Cal. 2008) ("Plaintiffs' description of the mechanisms that Defendant set up with each payment processor satisfies the requirement of a 'vehicle for the commission of at least two predicate acts of fraud[.]'").

Hopkins' allegations, however, do not pled facts showing the associates of the enterprise— here, AHMSI and Citibank—function as a continuing unit.  "[T]he continuity requirement focuses on whether the associates' behavior was 'ongoing' rather than isolated activity."  *Odom*, 486 F.3d at 553; *Bryant v. Mattel, Inc.*, 573 F. Supp. 2d 1254, 1263 (C.D. Cal. 2007) ("The 'continuing unit' requirement . . . is related to the notion that RICO was not meant to address discrete instances of fraud or criminal conduct.").  Courts often look to the length of time that the associates have interacted to determine whether they functioned as a continuing unit.  *See Bryant*, 573 F. Supp. 2d at 1263 ("[T]his requirement is related to the duration of the racketeering activities."); *see also Odom*, 486 F.3d at 553 ("An almost two-year time span is far more than adequate to establish that Best Buy and Microsoft functioned as a continuing unit.").

Similar to his failure to establish a pattern of racketeering activity, discussed further below, Hopkins' allegations do not indicate that the defendants' alleged behavior is ongoing, rather than isolated. *See Turkette*, 452 U.S. at 583 (noting "the proof used to establish these separate elements may in particular cases coalesce"). Even if the four cancelled checks were the proximate cause of Hopkins' non-judicial foreclosure, this alone is not sufficient to indicate that Citibank and AHMSI function as a continuing unit. *Cf. Izenberg*, 589 F. Supp. 2d at 1203 (finding no continuing unit when plaintiffs' complaint was focused on a single foreclosure sale); *Gamboa v. Tr. Corps*, 09-0007 SC, 2009 WL 656285, at *5 (N.D. Cal. Mar. 12, 2009) (same). Accordingly, the complaint fails adequately to identify a RICO enterprise.

2. Pattern of Racketeering Activity

Hopkins also fails to aver facts supporting the existence of a RICO pattern. A RICO claim requires a showing of "a pattern of racketeering activity" which is defined as "at least two acts of racketeering activity" in a ten year period. 18 U.S.C. § 1961(5). "Two acts are necessary, but not sufficient, for finding a violation." *Howard v. Am. Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989)). "[T]he term 'pattern' itself requires the showing of a relationship between the predicates and of the threat of continuing activity." *Id.*

Hopkins fails to allege a RICO pattern, because he has not pled facts supporting either closed-ended or open-ended continuity. "[T]o satisfy the continuity requirement, [a complainant] must prove either a series of related predicates extending over a substantial period of time, i.e., closed-ended continuity, or past conduct that by its nature projects into the future with a threat of repetition, i.e. open-ended continuity." *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1011 (9th Cir. 2002) (quoting *Howard*, 208 F.3d at 750) (alteration original). Defendants' alleged predicate acts occurred over a four-month period and are insufficient to show closed-ended continuity. *See Howard*, 208 F.3d at 750 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement. . . . Activity that lasts only a few months is not sufficiently continuous.") (alteration original); *Liu v. Li*, EDCV 10-00952 ODW, 2010 WL 4286265, at *5 (C.D.

Cal. Oct. 21, 2010) (finding plaintiffs did not sufficiently allege a "pattern" when the predicate acts of wire and mail fraud spanned from January 10, 2007 to March 12, 2007).

Open-ended continuity is shown by "[p]redicate acts that specifically threaten repetition or that become a 'regular way of doing business.'" *Id*. (quoting *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995)). Hopkins fails to allege facts that plausibly support his theory defendants improperly cancel customer loan payments as part of their regular way of doing business. Hopkins' conclusory allegation, unsupported by any facts in the record, that "what happened to plaintiff here is standard operating procedure for defendant[s]" is insufficient to meet Rule 9(b)'s heightened pleading requirements.[11] (ECF. No. 39 at 8).

Although it is not apparent how Hopkins can cure the deficiencies in his RICO claim, the policy of granting leave to amend "is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). "In determining whether leave to amend is appropriate, the district court considers 'the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Id*. (quoting *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999)). Although Hopkins' failure to abide by local rules and comply with a prior court order caused delay in these proceedings, *see* Order Denying Motion to Stay and Directing Plaintiff to File Responses to Defendants' Motions to Dismiss and Strike, Dec. 11, 2013 (ECF No. 18), and although it is uncertain if Hopkins can successfully amend his claim, that prospect, at this juncture, cannot be deemed "futile." *See Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990). Accordingly, the RICO claim is dismissed with leave to amend.

C.     Plaintiff's Remaining Claims

Hopkins' only remaining federal claim is the thirteenth claim for relief against ABC for violation of the Truth in Lending Act (TILA). While not raised by the parties, it appears that Hopkins' TILA claim also suffers from significant deficiencies. In particular, Hopkins' prayer for relief is premised upon an alleged "continuing right to rescind all loans . . . pursuant to 15 U.S.C. §

---

[11] Hopkins argues it is clear that defendant's alleged conduct is typical, because various state Attorneys General Offices have brought actions against AHMSI and because AHMSI was the subject of CBS *60 Minutes* "robo-signing" expose. (ECF No. 39 at 8). This evidence is not in the record before the court and is not considered here.

1635(a) and Regulation Z 12 C.F.R. § 226.23(a)(3)."  (FAC, at ¶ 108).  Hopkins' home loan, however, evidently is a "residential mortgage transaction," which is specifically exempted from the operation of the aforementioned sections.[12]  15 U.S.C. § 1635(e); 12 C.F.R. § 226.23(f).  Moreover, barring exceptions not applicable here, any right of rescission Hopkins held expired under the statute in October 2009.  15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor[.]").  Therefore, Hopkins is ordered to show cause why his TILA claim should not also be dismissed.  Considering the extent of the state court's prior involvement in this litigation, if Hopkins is unable to state a federal claim, this action will be remanded to the Alameda County Superior Court.

## V.   CONCLUSION

For the aforementioned reasons, defendants' motions to dismiss are GRANTED in part.  Hopkins' RESPA claims are dismissed with prejudice and his RICO claims are dismissed with leave to amend.  If plaintiff wishes to amend his complaint, he must refile within thirty (30) days of this order.  Hopkins is further ordered to show cause within thirty (30) days why his TILA claim against ABC should not be dismissed.  Hopkins' further filings, if any, must comply with the Federal Rules of Civil Procedure and the Civil Local Rules of the Northern District of California.

IT IS SO ORDERED.

Dated:  2/13/14

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[12] "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(x).